## PORTER v. SAND.
### Civ. A. No. 2891.

District Court, W. D. New York.
June 11, 1946.

David A. White, of Buffalo, N. Y. (George M. Blackmon, of Jamestown, N. Y., of counsel), for plaintiff.

Goodman A. Sarachan, of Rochester, N. Y., for defendant.

KNIGHT, District Judge.

This is a motion for a temporary injunction to restrain defendant from doing business as a custom tailor at Rochester, New York, until he complies with Section 1389.-106 of Maximum Price Regulation 177, which reads as follows:

"Sec. 1389.106. Maximum prices for garments which cannot be priced under preceding sections. In those cases in which the maximum price of a garment cannot be determined by the terms of Sections 1389.-103, 1389.104 and 1389.105, the maximum price shall be a price determined by the seller pursuant to specific authorization from the Office of Price Administration. A seller who seeks an authorization to determine a maximum price under the provisions of this section shall file with the Office of Price Administration in Washington, D. C., an application setting forth:

"(a) A description in detail of the garment for which a maximum price is sought; and

"(b) A statement of the facts which differentiate such garment from garments priced under Sections 1389.103, 1389.104 and 1389.105; and shall furnish such further relevant information as may be required by the Office of Price Administration."

It appears that defendant, until September, 1943, was employed as a foreman in the tailor shop of Rochester Custom Tailors of Rochester, New York; that, in September, 1943, he went into business for himself in Rochester, New York, under the name of Sandy Custom Tailors. His total business for the balance of that year was $4,663.50. In his letter of April 20, 1946, addressed to OPA at Buffalo, New York, a copy of which is attached to plaintiff's memorandum, he wrote:

"Garments sold—Men's Suits—Custom Made

Description of garments made here—

Men's Suit Coats—(Pants and Vests sent out to be made)

Class of Trade—Individual ultimate Consumer

Manufacture—Inside Shop."

Defendant never complied with said Sec. 1389.106 of M P R 177.

Plaintiff urges that

"(a) If he (defendant) is exempt from the provisions of M P R 607, he is still operating under M P R 177 and must comply with its provisions.

"(b) If he is governed by M P R 607, he must get in compliance with M P R 177 because his operations under M P R 177 were not legal and he must have *legal* prices and legal highest price line, which can only be established by approval under M P R 177."

Since the motion for injunction is based on an alleged violation of M P R 177, Sec. 1389.106, defendant's offense consisted in his failure to procure a determination of the maximum prices of his garments. This was to be "determined by the seller pursuant to specific authorization from the Office of Price Administration." The section provides that "A seller who seeks an authorization to determine a maximum price under the provisions of this section shall file with the Office of Price Administration in Washington, D. C. an application * * *."

It appears that the maximum price under this section is not to be determined generally but is to be determined by each individual seller pursuant to specific OPA authorization. M P R 177 provides (Sec. 1389.108): "This Maximum Price Regulation No. 177 shall apply, and the General Maximum Price Regulation shall not apply, to sales or deliveries for which maximum prices are established by this Maximum Price Regulation No. 177."

Said Sec. 1389.106 applies to "those cases in which the maximum price of a garment cannot be determined by the terms of Sections 1389.103, 1389.104 and 1389.105." These govern the following: Sec. 1389.-103— *"Maximum prices for sales at retail of ready-made garments"*; Sec. 1389.104— *"Maximum prices for sales of ready-made garments otherwise than at retail"*; Sec. 1389.105— *"Maximum prices for all sales of men's and boys' tailored clothing 'made to measure' and 'tailored to the trade.'"* Sellers of garments under these three categories are specifically required to keep records—Sections 1389.114, 1389.115 and 1389.116. Sellers under category Sec. 1389.106 are not specifically required to

keep any record nor do we find that they are specifically required to obtain "specific authorization from the Office of Price Administration" to determine the maximum price. But M P R 177 does require defendant to apply for approval and such authorization is contemplated.

M P R 177 provides (Sec. 1389.117): "Persons violating any provision of this Maximum Price Regulation No. 177 are subject to the criminal penalties, civil enforcement actions, suits for treble damages and proceedings for the suspension of licenses provided by the Emergency Price Control Act of 1942."

M P R 177 (Sec. 1389.112) provides: "Lower prices than those established by this Maximum Price Regulation No. 177 may be charged, demanded, paid or offered."

Defendant urges that he "established a price range substantially lower than those of his competitors for similar material and workmanship." The amount of his prices during this period are immaterial. The prices he was using had no legal basis.

Until he establishes approved ceiling prices under MPR 177, it would be impossible for him to get into compliance with MPR 607 and he would be in violation under both regulations.

MPR 607 declares: "This regulation shall become effective April 15, 1946." It provides in Sec. 10: "The coverage of this regulation is stated in section 1. Where this regulation applies it supersedes the provisions of Maximum Price Regulation 177 (Men's and Boys' Tailored Clothing)."

Sec. 1 provides: "(1) This regulation applies to the specified men's and boys' tailored garments included in the groups listed in appendix A. Under certain conditions (enumerated in (2) and (3) below) the regulation also applies to the men's and boys' garments included in the groups listed in appendix B and appendix C."

Subdivision (c) of Sec. 1 provides:

"You are exempt from the provisions or this regulation if your total net sales of garments listed in appendix A is less than a specified amount. You qualify for this

exemption if you meet any of the following conditions:

"(2) You made manufacturers' sales of garments listed in appendix A during part of 1943 and for each calendar quarter of 1943 during which you were in 'business' your total net sales were $5,000 or less."

After stating "the following conditions", including condition (2) above quoted, MPR 607 provides: "However, if in any calendar quarter after the effective date of this regulation, your total net sales of appendix A garments exceed $5,000, you are subject to all of the provisions of this regulation for the next quarter and for each quarter thereafter."

The effective date of MPR 607 is April 15, 1946. Since no "calendar quarter" has elapsed since then, it cannot now be determined whether defendant will be subject to MPR 607. Is he still subject to MPR 177?

Under "Statement of the Considerations Involved in the Issuance of Maximum Price Regulation No. 607" is the following: "2. *Adjustment of Highest Price Line Limits.*

The accompanying regulation provides for the adjustment of highest price line limits previously established by manufacturers under Maximum Price Regulation 177."

Section 5(b) (1) of MPR 607 provides: "(b) *What is a 'highest price line limit.'*—

"(1) *For groups for which highest price line limits can be determined under Maximum Price Regulation 177.* Your highest price line limits for groups of garments for which highest line limits can be determined under Maximum Price Regulation 177 are found on the basis of your operations under that regulation."

Defendant, therefore is still subject to MPR 177.

MPR 177 does not specifically provide for injunctions. They are provided for in the Emergency Price Control Act of 1942, Title II, Sec. 205, 50 U.S.C.A.Appendix, § 925, which provides in part as follows: "(a) Whenever in the judgment of the Administrator any person has engaged * * in any acts or practices which constitute

* * * a violation of any provision of section 4 of this Act (section 904 of this Appendix), he may make application to the appropriate court for an order enjoining such acts or practices, or for an order enforcing compliance with such provision,. and upon a showing by the Administrator that such person has engaged * * * in any such acts or practices a permanent or temporary injunction, restraining order, or other order shall be granted without bond."

Said section 902 of the Appendix provides in part as follows: "(a) Whenever in the judgment of the Price Administrator * * * the price or prices of a commodity or commodities have risen or threaten to rise to an extent or in a manner inconsistent with the purposes of this Act, he may by regulation or order establish such maximum price or maximum prices as in his judgment will be generally fair and equitable and will effectuate the purposes of this Act."

At the beginning of MPR 177 it is recited: "In the judgment of the Price Administrator it is necessary and proper to establish prices for men's and boys' tailored clothing which differ in some respects from the general prices established by the General Maximum Price Regulation. The prices established by the following Regulation, in the judgment of the Price Administrator, are fair and equitable, and will effectuate the purposes of the Emergency Price Control Act of 1942."

MPR 177, Sec. 1389.101 provides:

"*Prohibition against dealing in men's and boys' tailored clothing above maximum prices.* On and after July 11, 1942, regardless of any contract or other obligation:

"(a) No person shall sell or deliver men's and boys' tailored clothing (defined in Sec. 1389.119) at prices higher than the maximum prices established by this Maximum Price Regulation No. 177."

The purposes of the 1942 Act are stated in Title I, Sec. 1 thereof, 50 U.S. C.A.Appendix, § 901, "While the Act is to be given a liberal construction in order to effectuate its highly remedial purposes, it is clear that those purposes are to limit the prices of commodities and rents." *Automatic Fire Alarm Co.* v. *Bowles*, Em.App.,

143 F.2d 602, 605. "While private rights and interests are necessarily affected, the controlling purpose of the statute is to protect the public during the war emergency." Bowles v. Farmers Nat. Bank of Lebanon, Ky., 6 Cir., 147 F.2d 425, 428.

■ Defendant does not contend that he has never been subject to MPR 177. In his counsel's memorandum, it is said: "The defendant never having had anything to do with the business end of Rochester Custom Tailors, did not know that even though he was not a regular retailer, he was subject to MPR 177 or any other O.P.A. Regulation." Whatever may have been the prices at which he sold his garments since September, 1943, they were not authorized by law because he never complied with MPR 177, Sec. 1389.106. It might be said that he did not sell above maximum prices because these had never been established in his case. It was, however, the evident purpose of MPR 177 to establish maximum prices for all the commodities therein named. This was never done in defendant's case. He wholly neglected, whether from ignorance or not, to determine the maximum prices of his garments "pursuant to specific authorization from the Office of Price Administration."

It is not now sought to punish him or collect any damages. All that is sought is a temporary injunction to restrain him from doing business until he complies with MPR 177, Sec. 1389.106.

Plaintiff's motion for a temporary injunction is therefore granted.